Douglas P. YERKE, Petitioner,

v.

UNITED STATES POSTAL SERVICE,
Respondent.

No. 03–3113.

United States Court of Appeals,
Federal Circuit.

DECIDED: July 9, 2003.

Before MAYER, Chief Judge,
MICHEL, and RADER, Circuit Judges.

PER CURIAM.

Petitioner Douglas P. Yerke petitions for review of a decision of the Administrative Judge ("AJ"), *Yerke v. United States*

*Postal Service,* SE–3443–02–0042–I–1, 93 M.S.P.R. 308 (MSPB, Nov. 22, 2002), which was made final by the Merit Systems Protection Board ("Board") on November 22, 2002. The AJ dismissed Yerke's appeal of actions of the United Stated Postal Service ("the agency") for lack of jurisdiction on the ground that Yerke suffered no reduction in pay or grade.[1] After reviewing Yerke's arguments, we conclude that the AJ did not err in dismissing the appeal for lack of jurisdiction, because substantial evidence supports the AJ finding that no appealable reduction-in-force ("RIF") action occurred, that there was no new, material evidence requiring the Board to reconsider the AJ's decision, and that the AJ did not abuse his discretion in staying discovery pending resolution of the jurisdictional issue. The Board decision is therefore *affirmed.*

## BACKGROUND

Yerke was originally assigned to a level 5 position in the Flat Sorter Section with the agency's facility in Portland, Oregon. By letter of June 29, 2001, the agency advised him that his position would be abolished effective September 8, 2001, because of automation. The agency also stated that he would have retreat rights to return to the Sorter Section at a later date pursuant to a Memorandum of Understanding between the agency and the American Postal Workers Union ("MOU"). The agency further encouraged him to bid on posted assignments, stating that failure to bid would result in his being an unassigned regular and subject to arbitrary assignment. Yerke did not seem to bid on the posted assignment. By a second letter of August 31, 2001, the agency notified Yerke that "as an unassigned employee," he was placed in the Automation Section until "such time [he] was award[ed] a bid position or assigned."

Yerke appealed his position change to the Board on November 8, 2002, claiming that the agency action constituted a RIF in violation of his rights as a veteran. The agency filed a motion to dismiss for lack of jurisdiction and a motion to stay any further discovery until the Board ruled on the jurisdictional issue. The AJ granted the motion for a stay of discovery.

Subsequent to his appeal to the Board, on December 18, 2001, Yerke was assigned to a permanent level 5 position effective December 29, 2001. His appeal apparently concerns only the time in the temporary assignment.

On March 13, 2002, the AJ held that the Board lacked jurisdiction over the appeal. The AJ found that Yerke suffered no reduction in pay or grade, albeit being placed in a possibly less desirable job assignment, noting that it was well settled law that reassignment without change in grade or pay was not within the Board's jurisdiction. The AJ decision became final when, on November 22, 2002, the Board denied Yerke's petition for review.

Yerke timely appeals the Board decision. We have jurisdiction over the final Board decision under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

This court may reverse a decision of the Board only if it is arbitrary, capricious, an abuse of discretion or contrary to law,

---

1. The AJ also held that Yerke did not establish Board jurisdiction under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), which grants the Board jurisdiction over appeals from any person alleging discrimination in federal employment on account of prior military service. Yerke does not appeal the AJ's decision regarding USERRA.

procedurally defective, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *see also King v. Erickson,* 89 F.3d 1575, 1580 (Fed.Cir.1996). We review the Board's conclusion on its jurisdiction *de novo. Harants v. United States Postal Serv.,* 130 F.3d 1466, 1468 (Fed.Cir.1997).

I

■ Yerke argues that a RIF occurred, over which the Board has jurisdiction. We disagree and conclude that the AJ properly found a lack of Board jurisdiction.

Under the RIF regulation, "[a]n employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the Merit Systems Protection Board." 5 C.F.R. § 351.901 (2003). Thus, the Board has no jurisdiction over Yerke's appeal if he was not furloughed for more than 30 days, separated, or demoted by a RIF. The evidence clearly shows that Yerke was not furloughed or separated. Yerke seems to assert that he was demoted, which appears to be grounded on his assertion that the Automation Section position was a "lower level" one. However, Yerke himself was never reduced to a grade level lower than 5 during his temporary assignment in the Automation Section. "Demotion" is defined as:

a change of an employee, while serving continuously within the same agency:

(i) To a *lower grade* when both the old and the new positions are under the General Schedule or under the same type graded wage schedule; or

(ii) To a position with a *lower rate of pay* when both the old and the new positions are under the same type ungraded wage schedule, or are in different pay method categories.

*Id.* § 210.102(b)(4) (emphases added). Thus, "demotion" occurs, if other parts of the definition are also satisfied, only when an employee is either changed to a lower grade or a lower rate of pay. Yerke suffered neither. Yerke himself provides utterly no facts to show that the agency reduced his pay or grade. However, there was ample evidence showing the contrary. Susan Friend, a personnel officer of the agency who reviewed Yerke's file, declared that Yerke was never downgraded or reduced in pay after his previous level 5 position was abolished. In fact, Yerke was assigned to a permanent level 5 position effective December 29, 2001. Even as to the interim assignment to the Automation Section, he continued to receive his level 5 pay. We thus conclude that substantial evidence supports the AJ finding that Yerke was not reduced in pay or grade. He was therefore not demoted. Neither was he "furloughed for more than 30 days" or "separated." Pursuant to the RIF regulation, 5 C.F.R. § 351.901, there can be no legal error in the conclusion that there was no appealable RIF action here for Board jurisdiction.[2]

II

■ Yerke also argues that the Board incorrectly denied his petition for review when it decided that there was no new, previously unavailable evidence that would

**2.** The cases cited by Yerke in his supplemental brief are not relevant to the present one. The Board in those cases found, as Yerke quotes in his supplement, the petitioner there was "released ... from his competitive level" and assigned to "a lower graded position," albeit with retained pay. Here, Yerke was not assigned to a "lower graded position" even though he felt the Automation Section position was a lower one. He was never released from his competitive level of 5 before, during, or after the temporary assignment period. Yerke's mere assertion that he was assigned to a lower position cannot by itself align this case to those where the Board indeed found an actual reduction in grade.

affect the outcome of the case. Yerke asserts that he presented to the Board new evidence, i.e., a complete copy of the MOU, which was not fully before the AJ. The Board may review an initial decision if there is any "[n]ew and material evidence available that, despite due diligence, was not available when the record closed." 5 C.F.R. § 1201.115(d)(1) (2000). Irrespective of the truthfulness of Yerke's assertion that the full MOU was "new" and "previously unavailable" evidence, the rest of the MOU is clearly immaterial to the jurisdictional issue before the Board. The AJ had before it the applicable portion of the MOU. The balance of the MOU simply stipulates the procedures under which the agency will conduct reassignment; it does not show, explicitly or implicitly, whether Yerke suffered a reduction in pay or grade necessary for the Board to have RIF jurisdiction. We conclude that the Board did not err in denying Yerke's petition for review.

### III

Yerke further argues that the AJ erred in staying discovery pending deciding the jurisdictional issue and not applying Federal Rule of Evidence 106, which provides that when part of a writing is introduced by a party, the adverse party may require introduction of other parts of the writing that should be considered contemporaneously with it. Yerke asserts that the agency introduced before the AJ a part of the MOU that referred to reassignments but made no reference to the other part of the MOU that referred to the rights of preference-eligible veterans. Yerke's citation of the Federal Rule of Evidence is irrelevant here, regardless of its inapplicability to Board proceedings. As stated above, the MOU is an understanding between the agency and the union as to the procedures the agency would follow during its re-deployment process.

It cannot prove a loss in Yerke's pay or grade if he actually suffered none. The MOU is therefore immaterial to the jurisdictional issue before the Board on the facts of this case. The Board thus did not abuse its discretion in staying discovery, because Yerke has not shown, and could not show, that access to the full MOU would have changed the outcome of the case.

For all the above reasons, the decision of the Board must be and is affirmed.